IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TABLEWARE ANTITRUST LITIGATION. _____/ | No   C-04-3514 VRW<br><br>ORDER |

By letters dated April 14, 2006 (Doc ##101, 102, 104), the parties have presented a discovery dispute in accordance with the streamlined practice of dealing with discovery disputes in lieu of formalized motion practice.

In this action, plaintiffs allege that defendants Federated Department Stores, Inc ("Federated") and The May Department Stores Co ("May"), which both operate department stores across the United States, and defendants Lenox, Inc ("Lenox") and Waterford Wedgwood, USA ("Waterford"), which both produce fine tableware sold in the United States, conspired with one another to fix the price of tableware and to boycott Bed, Bath and Beyond ("BBB"), a competitor of Federated and May.  Plaintiffs contend that this conspiracy began around June 2001.  Doc #101 at 2.  Based on discovery materials, plaintiffs' expert, Stanford economics professor Roger G Noll, concludes that for the Lenox products, "the anticompetitive harm arising from the refusal to deal probably had

dissipated sometime in late 2003." Doc #102 (Noll Decl) at 7. Noll also concludes that "the effect of the conspiracy on the availability of products in BBB ended much later for Waterford Wedgwood, so that the effect of the refusal to deal ended in late 2004 at the earliest –– and may not have totally disappeared until 2005." Id.

At issue presently is plaintiffs' motion to compel defendants to produce transactional and sales data for 2005 for Waterford and Lenox tableware products. Doc #101 at 1. Plaintiffs contend that this "transaction data is clearly relevant to plaintiffs' analysis of damages" because "[i]t is potential evidence of post-conspiracy market prices * * *." Id at 2. Defendants counter that (1) plaintiffs delayed in requesting this data and are not entitled to the data on the eve of the extended discovery cutoff (Doc #104 at 1-2); (2) requiring defendants to produce this data would contradict a prior agreement between the parties in which defendants agreed to provide data for the years 2000-2004 (id at 3) and (3) the requested data is only tangentially related to plaintiffs' allegations (id at 2-3). Defendants also contend that they would face significant labor and operational costs in producing the data. Id at 3 n4.

Plaintiffs do not appear to have delayed unduly in requesting the 2005 data. Plaintiffs explain that only "during discovery it was learned that Waterford did not begin selling its higher-end Waterford line of tableware products at Bed Bath & Beyond until around December 2004." Doc #101 at 2. Although defendants contend that plaintiffs "could have learned whether BBB was carrying Waterford simply by walking into a participating BBB

2

(or even going online to BBB's website)," Doc #104 at 2, this sort of investigation would not have necessarily revealed when BBB <u>began</u> carrying Waterford tableware.  And in any event, plaintiffs' February 17 and 24, 2006 discovery requests for the 2005 data (Doc #101 at 3) were timely because they provided defendants over a month to respond before the March 31, 2006 discovery cut-off date.

Additionally, the parties' prior agreement regarding data between 2000-2004 does not bear on plaintiffs' current discovery request for 2005 data.  Although defendants have produced a letter memorializing the parties' negotiations and indicating that plaintiffs only requested data up to August 23, 2004, the letter does not suggest that plaintiffs were precluded from requesting 2005 data.  Rather, these negotiations focused on whether defendants would have to produce data from January 1, 2000, to the beginning of the class period on May 1, 2001.  Doc #104, Ex 1 at 1-2.  These negotiations do not govern whether plaintiffs could subsequently request 2005 sales data, especially because plaintiffs discovered only later that the alleged refusal to deal involving Waterford continued until December 2004.

Finally, the court agrees with plaintiffs that the 2005 data is relevant to plaintiffs' claims.  As explained by Professor Noll, the "before-after method" of determining the effects of an anticompetitive act requires comparing "the price of a product during the period that the anticompetitive act was in effect * * * with [the price in] a period in which the act was not in effect."  Noll Decl at 4.  If the alleged refusal to deal involving Waterford continued until December 2004, the 2005 transactional and sales data would be relevant for applying the before-after method.

3

Accordingly, the court GRANTS plaintiffs' motion to compel defendants to produce 2005 transactional and sales data for Waterford tableware products.  Given that plaintiffs admit that the anticompetitive harm from the refusal to deal with Lenox tableware products had likely dissipated by late 2003, Noll Decl at 7, the court DENIES plaintiffs' motion as to Lenox tableware products. The court also DENIES defendants' request to shift costs of this discovery to plaintiffs, Doc #104 at 3 n4, given that the discovery is relevant and was timely requested by plaintiffs.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge