IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TABLEWARE ANTITRUST LITIGATION _____/ THIS DOCUMENT RELATES TO ALL ACTIONS _____/ | No   C-04-3514 VRW  ORDER |

      The court has before it motions in limine filed by plaintiffs and defendants. As the court writes principally for the parties, it will simply address seriatim certain issues raised in those motions, without laying out the full factual background of each of the motions.

      To the extent an issue is not addressed in this order, it is because the court has concluded that the issue is not an appropriate subject for a motion in limine or is not ripe for decision and will, therefore, be deemed DENIED. The court anticipates addressing such issues as they arise at trial, if necessary, and outside the hearing of the jury, if appropriate. As the parties are on notice of each other's contentions regarding the admissibility of certain evidence, the court expects counsel to be well-prepared at trial to address issues of relevance, foundation and admissibility.

**(1) <u>Plaintiffs' motion to prevent defendants from obtaining trial testimony from James Zimmerman (Doc #234)</u>**

Plaintiffs seek an order prohibiting Federated's former Chief Executive Officer, James Zimmerman, from testifying at trial. In lieu of Zimmerman's live testimony, plaintiffs intend to read into evidence Zimmerman's invocation of the Fifth Amendment during his deposition. Defendants assert they do not intend to ask Zimmerman (a non-party who lives outside of California) to testify at trial. Doc #262 at 2:10-11. Accordingly, this motion is DENIED as moot.

**(2) <u>Plaintiffs' motion to preclude expert testimony constituting a legal conclusion (Doc #235)</u>**

Plaintiffs seek an order prohibiting defendants from eliciting "legal conclusions" from expert witness Dr Daniel L Rubinfeld. Defendants characterize plaintiffs' motion as "utterly unnecessary (and premature)," though they acknowledge that the federal rules of evidence bar such testimony. Doc #262 at 2.

The court agrees with defendants that it should assess whether specific testimony amounts to a legal conclusion at trial rather than in the abstract. See <u>United States v Noah</u>, 130 F3d 490, 496 (1st Cir 1997) ("A court is not required to make judgment calls about admissibility a priori and out of context."). Accordingly, plaintiffs' motion is DENIED.

//
//
//
//

2

**(3) Plaintiffs' motion to preclude defendants from presenting evidence of plaintiffs' failure to mitigate (Doc #236)**

Plaintiffs move to preclude defendants from presenting evidence of plaintiffs' failure to mitigate damages, arguing that a failure to mitigate defense is irrelevant in a price-fixing case. But plaintiffs disavowed their price-fixing theory during the summary judgment proceedings, rendering this suit, in plaintiffs' words, "a group boycott case." Doc #161 at 8. As a result, defendants no longer intend to assert that plaintiffs failed to mitigate their damages. Doc #262 at 3. Accordingly, this motion is DENIED as moot.

**(4) Plaintiffs' motion to preclude defendants from presenting evidence regarding or referencing internal antitrust compliance policies (Doc #237)**

Plaintiffs seek to exclude evidence of defendants' antitrust compliance policies and programs under FRE 403. Defendants view such evidence as relevant to rebutting plaintiffs' circumstantial evidence of conspiracy.

The court finds that defendants' compliance policies pertain to this litigation, especially with respect to the so-called "mantra" invoked by defendants during the alleged conspiracy. Plaintiffs maintain that defendants' use of similar language in speaking to the manufacturers about the rollout raises an inference of coordination. Defendants, by contrast, assert that their antitrust compliance policies account for the parallel language, as they allegedly instruct retailers to recite this phrase in order to avoid implicating the antitrust laws.

3

Plaintiffs' apparent impression that defendants' alternative explanation would "confuse" the jury completely misapprehends FRE 403. As defendants note, FRE 403 does not protect a party from all prejudice, only unfair prejudice. See Deters v Equifax Credit Info Servs, 202 F3d 1262, 1274 (10th Cir 2000). (The late Judge Robert Schnacke quipped: "Nobody is interested in evidence unless it is prejudicial"). Although evidence of defendants' antitrust compliance policies may "prejudice" plaintiffs by rendering their claim of conspiracy less probable, such evidence is not unfair. See FRE 403 advisory committee notes (defining "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"). See also United States v Benedetti, 433 F3d 111, 118 (1st Cir 2005) ("Although this evidence likely worked to the appellant's detriment, Rule 403 is concerned not with prejudicial evidence, but with unfairly prejudicial evidence."). Accordingly, plaintiffs' motion is DENIED.

(5) **Plaintiffs' motion to preclude references to irrelevant information regarding class representatives (Doc #238)**

Plaintiffs seek to prevent defendants from referring to class representatives' relationships with counsel, involvement in previous litigation and fee agreements with class counsel in this litigation. Doc #238. Such evidence, plaintiffs contend, does not pertain to the present suit and should thus be excluded under FRE 402 and 403. Defendants oppose categorical exclusion, emphasizing that this evidence may be admissible to impeach the class representatives' credibility on cross-examination by showing the

4

existence of bias, interest or prejudice. <u>Udemba v Nicoli</u>, 237 F3d 8, 17 (1st Cir 2001) ("bias is fertile territory for cross-examination").  The class representatives' fee arrangement, in particular, is said to constitute "classic evidence of bias, which is routinely permitted on cross-examination."  <u>Crowe v Bolduc</u>, 334 F3d 124, 132 (1st Cir 2003) (cross-examination regarding bias resulting from a contingent fee agreement was appropriate).

The court declines to approve unconditionally defendants' planned impeachment tactics, but at least agrees with defendants that the court should defer ruling on this issue until it arises in trial.  Because referencing the class representatives' relationships with counsel, involvement in previous litigation and fee agreements with class counsel may be admissible for the purpose of impeachment, categorical exclusion under plaintiffs' motion is inappropriate.  Accordingly, plaintiffs' motion is DENIED.

(6) <u>Plaintiffs' motion to preclude evidence of or reference to any adverse consequences to defendants that could result from a judgment in favor of plaintiffs (Doc #239)</u>

This motion aims to exclude references to the fact that defendants "may suffer an adverse consequence from any potential judgment in this case."  Doc #239 at 1.  Defendants find this motion over broad and unripe.

Plaintiffs are correct to observe that reference to adverse consequences may be inadmissible, see e g, <u>Rebolledo v Herr-Voss Corp</u>, 101 F Supp 2d 1034, 1036-37 (ND Ill 2000) (holding evidence or argument that judgment against a manufacturer would

5

1 cause financial harm or burden was inadmissible), but the court
2 finds it inappropriate to block such evidence via plaintiffs'
3 sweeping motion.
4       During this litigation, both parties have emphasized that
5 Federated and May lost market share over the past few years,
6 especially with respect to the sale of tableware.  This storyline
7 involves reference to defendants' present financial standing, yet
8 plaintiffs' vague motion threatens to cut-short this vital
9 evidence.
10       In any event, defendants assert they have "no intention
11 of arguing that [they] will go out of business if [p]laintiffs
12 prevail."  Doc #262 at 7.  The court finds no reason to rule in the
13 abstract before trial that all evidence of "adverse financial
14 consequences" should be excluded.  Accordingly, plaintiffs' motion
15 is DENIED.

**(7) Plaintiffs' motion to preclude reference to treble damages under the Clayton Act (Doc #240)**

19       Plaintiffs seek an order precluding defendants "from
20 referencing the fact that any damages awarded by the jury will be
21 trebled."  Doc #240 at 1.  In response, defendants reason that
22 because "the jury may well be aware of the fact that damages are
23 trebled," plaintiffs "can claim no unfair prejudice from the jury
24 learning of the Sherman Act's treble damages provision."  Doc #262
25 at 7.
26       In antitrust actions, "courts have uniformly concluded
27 that mentioning treble damages and attorney[] fees to the jury is
28 improper."  <u>HBE Leasing Corp v Frank</u>, 22 F3d 41 (2d Cir 1994).  See

6

also <u>CVD, Inc v Raytheon Co</u>, 769 F2d 842, 860 (1st Cir 1985); <u>Arnott v American Oil Co</u>, 609 F2d 873, 889 n15 (8th Cir 1979); <u>Noble v McClatchy Newspapers</u>, 533 F2d 1081, 1090-91 (9th Cir 1975), vacated on other grounds, 433 US 904 (1977); <u>Pollock & Riley, Inc v Pearl Brewing Co</u>, 498 F2d 1240, 1242-43 (5th Cir 1974).

Defendants attempt to hoist themselves over this wall of precedent by a case whose age exceeds a half century, <u>Bordonaro Bros Theatres, Inc v Paramount Pictures, Inc</u>, 203 F2d 676, 678 (2nd Cir 1953) (ruling that references to Sherman Act treble damages "is so usual a course in jury trials as to occasion no comment" where the provision was referenced in the pleadings and in the statute itself). Making matters worse for defendants, their exact argument has already been rejected in <u>HBE Leasing Corp v Frank</u>, 22 F3d 41 (2d Cir 1994).

> As is evident from the law's development since our decision in <u>Bordonaro Brothers</u> forty years ago, today one could hardly say that reference to treble damages "is so usual a course in jury trial as to occasion no comment." In this sense, time has passed by the <u>Bordonaro Brothers</u> decision, and the dominant and more-reasoned view is that juries should not be made aware of trebling provisions.

Defendants thus fail to persuade the court to ignore clear precedent. Nor do they give reason for the court to stray from the skillful reasoning in <u>HBE Leasing Corp</u> and its progeny. Accordingly, plaintiffs' motion is GRANTED.

(8) <u>Plaintiffs' motion to compel attendance of witnesses or, in the alternative, to preclude live testimony (Doc #241)</u>

Plaintiffs seek an order requiring defendants to make available at trial, during plaintiffs' case-in-chief, all

7

individuals outside the court's subpoena power that defendants have identified as live witnesses for trial. Defendants have designated three witnesses as potential live witnesses – Terry Lundgren, Janet Grove, and Priscilla Cipollini – and agree to make these witnesses available during plaintiffs' case-in-chief so long as plaintiffs provide "reasonable and specific notice as to when their testimony is required" and "tender the required witness and travel fees, including the costs associated with flying to San Francisco." Doc #262 at 8. Further, defendants request that if plaintiffs elect to call any of these witnesses in their case-in-chief, the court should permit defendants to conduct its full examination of these witnesses during plaintiffs' case-in-chief in order to avoid burdening these witnesses with a return cross-country trip to San Francisco to testify later during Federated's case-in-chief. Id.

As defendants' offer appears to moot this issue, the court declines to rule on plaintiffs' motion. If an agreement is not reached, the court invites the parties so to inform the court promptly.

(1)  **Defendants' motion to exclude Zimmerman's deposition testimony (Doc #224)**

Defendants move to prohibit plaintiffs from referring to the invocation of the Fifth Amendment by Federated's former chief executive James Zimmerman during his deposition. Doc #224. In <u>Baxter v Palmigiano</u>, 425 US 308 (1976), the Supreme Court held that the drawing of the adverse inference from the invocation the Fifth Amendment in civil suit is proper when incriminating evidence is also presented. See id at 317-18. The Ninth Circuit

8

interprets Baxter as warranting an adverse inference in the civil context only if "independent evidence exists of the fact to which the party refuses to answer." Doe by & Through Rudy-Glanzer v Glanzer, 232 F3d 1258, 1264 (9th Cir 2000). This proviso is said to broker the competing interests of the party asserting the privilege and those of the adverse party, "who is deprived of a source of information that might conceivably be determinative in a search for the truth." SEC v Graystone Nash, Inc, 25 F3d 187, 190 (3d Cir 1994).

Defendants contend that no independent corroborating evidence exists to justify the court permitting adverse inferences here. As set forth in Doe v Glanzer, 232 F 3d 1258, 1264-66 (9th Cir 2000), in order to admit evidence of Zimmerman's invocation of the Fifth Amendment (and to permit the drawing of an adverse inference), the court must find three threshold requirements satisfied under FRE 104(a): the silence must be countered by "independent evidence of the fact being questioned"; there must be a substantial need for the information; and there must be no less burdensome way to obtain it. Doe v Glanzer, 232 F 3d 1258, 1264-66 (9th Cir 2000). "[A] case-by-case analysis with a balancing test which weighs the need for the information being sought * * * against the afforded constitutional protections is exactly what the law requires from the district court." Id at 1267. Although plaintiffs cite little in the way of corroborating evidence, the court declines to determine that the testimony is entirely inadmissible. The test articulated in Doe v Glanzer poses several context-specific issues that are inappropriate for resolution on a motion in limine.

Next, defendants argue that plaintiffs must establish an "identity of interests" between Zimmerman and defendants to "ma[ke] the adverse inference trustworthy," citing <u>Kontos v Kontos</u>, 968 F Supp 400 (SD Ind 1997) and <u>Fujisawa Pharm Co Ltd v Kapoor</u>, 1999 WL 543166, *9.  The court first notes that neither of these cases has been adopted by the Ninth Circuit.  In any event, even though Zimmerman was retired from his position as CEO at Federated when he was deposed by plaintiffs, evidence suggests that their interests remained aligned.  In <u>RAD Svcs, Inc v Aetna Casualty & Surty Co</u>, 808 F2d 271 (3d Cir 1986), the Third Circuit analogized from FRE 801(d)(2)(D) to hold that drawing a negative inference from a former employee's refusal to testify is permissible so long as there are factors "suggesting the retention of some loyalty by the former employee to the party-employer."  808 F2d at 275. Notwithstanding his retirement, Zimmerman had maintained an office at Federated that he used "occasionally" and Federated provided him with "secretarial assistance."  Doc #274, Ex 3 (Zimmerman depo) at 6:21-25.  Such facts suffice to suggest that Zimmerman retained "some loyalty" to the company he ran for so many years. Accordingly, the court declines to exclude Zimmerman's deposition testimony on the ground that he lacked an identity of interests with Federated.

Finally, defendants argue that Zimmerman's assertion of the privilege is irrelevant with respect to the alleged horizontal agreement between defendants.  Zimmerman's indictment from the New York Attorney General's office arose from his statements concerning vertical communications with Waterford, yet at his deposition, Zimmerman invoked the Fifth Amendment in response to questions

10

relating to horizontal, as well as vertical, communications. Hence, defendants contend that Zimmerman's invocation of the Fifth Amendment in response to questions about horizontal communications were influenced by his criminal liability relating to vertical communications and thus do not pertain to this litigation.

But defendants' theory goes to the weight, not the admissibility, of Zimmerman's deposition testimony. Zimmerman's response to questions relating to horizontal communications between defendants are relevant to proving a horizontal agreement. Whether those responses were colored by other motives is an argument for defendants to advance at trial. Further, defendants' rigid divide between vertical and horizontal communications does not square with the evidence here in which the vertical communications remain relevant to the extent they abetted the alleged horizontal agreement.

In sum, the court DENIES defendants' motion to exclude reference to Zimmerman's deposition testimony. Nevertheless, plaintiffs must establish a foundation for that testimony by adducing independent evidence of the surrounding facts before any portion of Zimmerman's deposition testimony will be admitted.

(2)  **Defendants' motion to exclude Zimmerman indictment (Doc #225)**

Defendants seek to exclude evidence of Zimmerman's indictment for perjury. Doc #225. Plaintiffs do not oppose defendants' motion, but "reserve the right" to rebut any evidence proffered by defendants that may require reference to or explanation of the indictment in order to avoid confusing or misleading the jury. Doc #271. Because a dispute does not appear

11

to exist between the parties, the court DENIES defendants' motion as moot.

**(3) Defendants' motion to exclude New York Attorney General investigation and settlement thereof (Doc #227)**

Defendants seek to prevent plaintiffs from referring to the so-called "assurance of discontinuance" that each of the defendants entered into with the New York Attorney General's (NYAG) office in July 2004. Pursuant to this assurance, the parties agreed to "settle and resolve" the NYAG's investigation. Paragraph VII, L of the assurances purports to limit the admissibility of the parties' settlement. For example, Federated's assurance mandates the following:

> neither this Assurance nor any acts performed or documents executed in furtherance of the Assurance (1) may be deemed or used as an admission of, or evidence of, the validity of any alleged wrongdoing, liability or lack of wrongdoing or liability; or (2) may be deemed or used as an admission of or evidence of any such alleged fault or omission of Federated in any civil, criminal or administrative proceeding.

FRE 408 provides that "[e]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to validity or amount, is not admissible to prove liability or invalidity of the claim or its amount." FRE 408. This rule extends to plaintiffs even though they were not a party to the settlement. See <u>United States v Contra Costa County Water Dist</u>, 678 F2d 90, 92 (9th Cir 1982). Accordingly, any reference to the assurance by

12

plaintiffs for the purpose of establishing liability, to impeach witnesses or to establish the validity of the amount of the claim is improper under FRE 408(a).

FRE 408 does not necessarily require exclusion, however, because plaintiffs may offer the existence of a settlement "for another purpose." United States v Hauert, 40 F3d 197, 199 (7th Cir 1994). For example, plaintiffs may use this evidence to explain why in 2002, about a year after the manufacturers terminated their relationship with Bed, Bath & Beyond, Waterford and Lenox decided to begin selling various tableware products to Bed, Bath & Beyond.

To be sure, plaintiffs' invocation of a permissible purpose does not ipso facto guarantee admissibility. Even if plaintiffs seek to use the assurance for a permissible purpose, the court must weigh the unfair prejudice that may result from introduction of the evidence with its probative value under FRE 403. Accordingly, while the court declines to preclude reference to the assurance, it will require a party seeking to admit any such evidence to seek leave to admit such evidence before introducing such evidence.

A second issue, apart from the assurance agreement, is whether plaintiffs may refer to the NYAG's investigation itself. Defendants argue that the investigation implicates FRE 404's restriction on character evidence. FRE 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." But defendants' theory neglects a threshold question: whether the investigation constitutes an "other crime[], wrong[] or act[]." Because the investigation pertains to the

13

alleged conspiracy at issue here, not a prior, "other" antitrust violation, it does not even implicate FRE 404(b). Accordingly, the court **DENIES** defendants' motion.

**(4) Defendants' motion to exclude hearsay statements emanating from Jeff Cooley (Doc #228)**

Defendants move to exclude testimony by Bed, Bath & Beyond employees regarding what Jeff Cooley, an executive at a non-party manufacturer, heard another person say in reference to Federated threatening to withdraw its business from Waterford if Waterford sold to Bed, Bath & Beyond. Defendants argue that this testimony constitutes hearsay included within hearsay under FRE 801 and 805. Although defendants articulate several independent bars to admission, it remains uncertain the purpose for which plaintiffs may proffer the evidence; hence, the court declines to rule on its admissibility at this juncture. Accordingly, defendants' motion is **DENIED**.

**(5) Defendants' motion to exclude Todd Johnson's testimony regarding alleged Federated statements to non-party manufacturers (Doc #229)**

Defendant seek to preclude plaintiffs from introducing Todd Johnson's testimony that he heard from a tableware manufacturer that an employee at Federated had threatened to cease carrying that manufacturer's product should they distribute to Bed Bath and Beyond. Doc # 229. It is plain to the court that this testimony may implicate the hearsay rules in several ways. Nevertheless, for reasons stated above, the court declines to rule

14

1 on this issue in the abstract.  Accordingly, defendants' motion is
2 **DENIED**.

4 **(6)  Defendants' motion to exclude testimony and report of expert R**
5     **Noll (Doc #231)**

6 Defendants move for the court to prevent Dr Noll from testifying regarding a horizontal boycott for the reason that Dr Noll did not provide a complete statement of his opinion regarding this theory in his written expert witness report.

10 FRCP 26(a)(2)(B) requires expert witnesses to provide a written report that contains "a complete statement of all opinions to be expressed and the basis and reasons therefor."  FRCP 26(a)(2)(B).  An expert report is to be a detailed and complete statement of the testimony of the expert on direct examination. FRCP 26 Advisory Committee Note to 1993 amendment.  If a party's expert witness, without substantial justification, fails to disclose such information, then FRCP 37(c)(1) provides that the party "shall not, unless such failure is harmless, be permitted to use [such information] as evidence at a trial."  FRCP 37(c)(1).

20 Defendants' argument fails because it hinges on an oversimplified theory of the case.  The vertical communications remain relevant to the extent they abetted the alleged horizontal agreement (though such communications cannot serve as an independent ground for antitrust liability).  As such, defendants' distinction between horizontal and vertical communications elevates form over substance.  Moreover, in his expert report, Dr Noll implies the existence of horizontal components to the boycott.  See e g, Noll expert report at 4 ("The common proof that the refusal to

*United States District Court*
For the Northern District of California

deal was anticompetitive is that it was the result of a collusive agreement"), 21 (Lenox and Waterford reversed their decisions to sell "to Bed, Bath & Beyond after receiving numerous and intense complaints from Federated and May").

      Granted, Dr Noll should have been more precise in setting out the scope of his expert report. But this deficiency does not rise to the level of violating FRCP 26(a)(2)(B) and is a matter defendants can explore in cross-examination. Hence, the court declines to circumscribe Dr Noll's testimony as defendants propose and defendants' motion is DENIED.

      IT IS SO ORDERED.

VAUGHN R WALKER

United States District Chief Judge