1

2

3

4

5

6

7

8

9

10

11

12

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE TABLEWARE ANTITRUST            No   C-04-3514 VRW
LITIGATION
_____/     ORDER

THIS DOCUMENT RELATES TO
ALL ACTIONS
_____/

    Plaintiffs in these consolidated cases allege that May
Department Stores Co and Federated Department Stores, Inc, which
operate department stores across the United States, and Lenox, Inc
and Waterford Wedgwood, USA, both of which produce fine tableware
sold in the United States, conspired with one another to boycott
Bed, Bath and Beyond, a competitor of May and Federated.
Plaintiffs claim to have purchased fine tableware from May and
Federated during the period of the alleged boycott and were thus
injured because the boycott impaired competition in that product
market.  Plaintiffs bring suit under § 1 of the Sherman Act,
alleging that defendants' conduct is condemned *per se*.
//

**United States District Court**
For the Northern District of California

On March 13, 2007, the court granted summary judgment to Waterford but denied summary judgment to Federated and May. Doc #287. In response, Federated and May (collectively "Federated") moved for administrative relief to file a second motion for summary judgment. Doc #290. The court heard oral argument on this motion on April 12, 2007. Doc #307.

Civ L R 7-9(b)(1) requires that reconsideration of any motion be accompanied by a specific showing of a "material difference in fact or law * * * from that which was presented to the Court" before entry of the order at issue and that, "in the exercise of reasonable diligence, the party applying for reconsideration did not know such fact or law at the time" of the order. Civ L R 7-9(b)(1). Federated asserts that it "could not have anticipated the basis" of its current motion because plaintiffs never argued that their claim against the retailers would survive "even if plaintiffs could not link Lenox or Waterford to any claimed conspiracy." Doc #290 at 2. The court disagrees. To the extent that these issues were not raised in Federated's first motion for summary judgment, plaintiffs are not to blame. Federated and Waterford moved for summary judgment in separate motions asserting distinct grounds; the fact that one party succeeded and the other failed is not unforeseeable. Accordingly, Federated's motion runs afoul of Civ L R 7-9(b). Acknowledging that it is better to recognize an error later than not at all, the court nevertheless proceeds to address the merits of Federated's motion.

Federated's motion relies on the following inference: by granting summary judgment for Waterford, the court necessarily

United States District Court
For the Northern District of California

concluded that the manufacturers did not agree with Federated and May to cancel the Bed, Bath & Beyond rollout.  Doc #290 at 1:19-20. Without an agreement, Federated reasons, the manufacturers acted unilaterally and no antitrust injury exists between plaintiffs and the retailers.  Id at 5:10-16.

To support this rigid dichotomy between conspiratorial and unilateral conduct, Federated relies on Copperweld Corp v Interdependence Tube Corp, 467 US 752 (1984), in which the Court observed that "[t]he Sherman Act contains a basic distinction between concerted and independent action."  Id at 767 (citing Monsanto Co v Spray-Rite Service Corp, 465 US 752 (1984)).  But see id at 768 (noting that § 1 "does not reach conduct that is 'wholly unilateral,'" suggesting the distinction is not so sharp) (emphasis added).  Yet this passage from Copperweld does not support the dichotomy Federated urges.  As a threshold matter, the cited language addresses a wholly inapposite situation:  it refers to the Sherman Act's distinction between § 1 and § 2 of the Act.  In Copperweld, the Court declined to follow the "intra-enterprise" conspiracy doctrine.  That theory of antitrust liability applied between a parent and subsidiary "when there is enough separation between the two entities to make treating them as two independent actors sensible."  467 US at 759.  The Court emphasized the difference between § 1 and § 2 in rejecting intra-enterprise liability because the parent-subsidiary relationship made any such agreement unilateral.  Id at 767-769 ("The conduct of a single firm is governed by § 2 alone and is unlawful only when it threatens actual monopolization.  It is not enough that a single firm appears to 'restrain trade' unreasonably.").  Copperweld's sweeping

3

United States District Court

For the Northern District of California

distinction between § 1 or § 2 does not shed light on the present litigation, in which the allegations indisputably concern multiple firms.

Moreover, Federated's position misconstrues plaintiffs' legal theory, which, as Federated insisted in earlier briefing, relies on a horizontal agreement between the retailers.  See Doc #185 at 2 (emphasizing that plaintiffs "abandoned" their vertical claims).  Hence, granting summary judgment for Waterford did not require the absence of <u>any</u> agreement, only insufficient evidence to establish an agreement to take part in the <u>horizontal</u> conspiracy between the retailers.  In its order, the court noted that the manufacturers appeared to cancel the Bed, Bath & Beyond rollout at the behest of the retailers, but nonetheless granted summary judgment for Waterford because there was insufficient evidence that the manufacturers conspired to join the retailers' boycott.

In this regard, <u>ES Development, Inc v RWM Enterprises, Inc</u>, 939 F2d 547 (8th Cir 1991), is instructive.  The plaintiff in <u>ES Development</u> purchased land to build an auto mall at which many dealerships would operate.  Existing dealers in the area formed a "dealer alliance" in order to oppose plaintiff's auto mall.  To do so, the alliance created a form letter complaining about the proposed auto mall, which each member sent to its respective car manufacturer.  Plaintiff sought to enjoin these efforts.  The Eighth Circuit rejected the dealers' contention that they merely exercised their legal rights independently.  Id at 554.  "The evidence * * * compels the inference that the dealers chose to exercise their individual legal rights <u>in a concerted manner</u> designed to impair plaintiff's ability to procure franchise

4

commitments from various manufacturers."  Id at 554-555 (emphasis added).  The court continued:

> The present case provides a further example of the antitrust maxim that "even an otherwise lawful device may be used as a weapon in restraint of trade."  * * *
> * * *
> In sum, the antitrust laws do not countenance such a concerted individual exercise of the otherwise legal rights of the members of a conspiracy to achieve a combined effect in restraint of trade in excess of that possible were the conspirators to act alone.

Id at 555-556.  Hence, otherwise "lawful" activity is not shielded from the antitrust laws when the activity is "part and parcel" of an effort to restrain trade.

The ES Development court further rejected the dealers' portrayal of the arrangement as a vertical restraint.  Although the complaints were vertical, "the individually filed dealer complaints arose from an agreement among the complaining dealers to * * * take simultaneous, parallel action in opposition to the practices of their more aggressive competitors."  Id at 556-557.  The vertical components "emanat[ed] from a horizontal agreement among the dealers to constrain competitive activity at the same dealer level * * * * and thus constitute a per se violation of the Sherman Act." Id.

One aspect of ES Development squarely undermines Federated's legal theory:  the car manufacturers were not defendants.  The ES Development plaintiff could not have been injured, as a causal matter, unless the car manufacturers complied with the dealers' demands, yet the court found that the dealers conspired horizontally and injured the plaintiff with nary a mention of the absent manufacturers' role.  This outcome cannot be

United States District Court

For the Northern District of California

squared with Federated's theory that non-conspiratorial conduct must be unilateral; if that were so, plaintiff could not have suffered an antitrust injury in ES Development without a finding that the manufacturers joined the conspiracy.

Apparently aware of this inconsistency, Federated retorts that "nowhere" in the ES Development opinion "does the Eighth Circuit hold that the suppliers did not participate in the challenged conspiracy." Doc #305 at 3 (citing ES Development, 939 F2d at 556). The court doubts whether anything may be inferred from what the Eighth Circuit did not say about car manufacturers, as they were not parties in the litigation. But more significantly, this omission does not rescue Federated's theory. To Federated, a party either conspires or acts unilaterally, with no shades of gray in between. Yet plaintiff in ES Development suffered an antitrust injury without the court finding that the car manufacturers joined the conspiracy. The fact that the car manufacturers were not defendants in the suit is besides the point; a plaintiff cannot bypass the requirement of antitrust injury by declining to sue some of the conspirators. ES Development thus demonstrates that conspiracy on the part of the manufacturers is not a prerequisite for antitrust injury.

Federated also attempts to distinguish ES Development on the ground that "the dealers conceded that they had entered into agreements with their [car manufacturers], which they described as vertical (not horizontal) restraints emanating from the provisions in the individual dealer agreements allowing them to protest the award of new franchises." Doc #305 at 3; see also id at 4 (defendants-dealers in ESD "conceded the existence of vertical

United States District Court
For the Northern District of California

1  restraints and the issue was whether the restraints should be

2  viewed as horizontal"). But acknowledging the existence of

3  independent vertical franchise agreements is not tantamount to

4  admitting involvement in the dealers' conspiracy. Again, the

5  Eighth Circuit did not hold that the car manufacturers were part of

6  the conspiracy; if anything, the court assumed that the individual

7  protest letters were lawful. Id at 555 (stating "we do not

8  question the legality of appellants' separately filed protests").

9      Apart from running against the case law, Federated's

10 formalism also errs as a matter of policy. Consider the logical

11 endpoint of Federated's artificial dichotomy between conspiratorial

12 and unilateral conduct. To avoid antitrust scrutiny, horizontal

13 conspirators could simply implement their conspiracy through an

14 unknowing third party — for example, by delivering the terms of

15 conspiracy through a courier. Because this courier cannot be

16 considered a "conspirator," as he is unaware of the horizontal

17 conspiracy, he must be acting unilaterally, at least in Federated's

18 view. And any injury flowing from the courier's unilateral conduct

19 is not antitrust injury. Hence, Federated's reasoning would enable

20 conspirators to immunize themselves via third party non-

21 conspirators. That is not what the antitrust laws countenance.

22 //

23 //

24 //

25 //

26 //

27 //

28 //

1    In sum, the court rejects the theory advanced in

2    Federated's second motion for summary judgment.  In the first

3    summary judgment order, the court concluded, based on the evidence

4    and market conditions, that the manufacturers may have agreed to

5    comply with the demands of Federated and May, but did not join the

6    alleged horizontal conspiracy to boycott Bed, Bath & Beyond.

7    Hence, in granting summary judgment for Waterford, the court did

8    not conclude that the manufacturers acted unilaterally.  As ES

9    Development makes plain, Waterford is not a necessary conspirator

10   to plaintiffs' theory of the case.  Accordingly, the court DENIES

11   Federated's second motion for summary judgment.

13        IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge